Flor VASQUEZ, Plaintiffs,

v.

T.W. McPHERSON, New York State Trooper, New York State Trooper "John Doe No. 1," New York State Trooper "John Doe No. 2," New York State Trooper "John Doe No. 3," New York State Police Lt. Louis Weber, New York State Police Sgt. Rodney Rogers, Defendant's.

No. 99 CV 10537(CM).

United States District Court,
S.D. New York.

Sept. 23, 2003.

Philip Dale Russell, Esq., Russell & Wells, Greenwich, CT, for plaintiff.

Nicola N. Grey, AAG, Office of the New York State Attorney General, New York City, for defendant.

## DECISION GRANTING DEFENDANT McPHERSON'S MOTION FOR PARTIAL SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION TO EXCLUDE EVIDENCE AND OMNIBUS MOTION FOR PRECLUSION, AND DISMISSING COMPLAINT AS TO WEBER, ROGERS AND ALL JOHN DOE DEFENDANTS

McMAHON, District Judge.

This is an action commenced pursuant to 42 U.S.C. § 1983. Plaintiff, Flor Vasquez, claims that on October 30, 1998, in the Town of Port Chester, she was falsely arrested and subjected to excessive force by members of the New York State Police. She also claims that she was thereafter maliciously prosecuted.

Trooper Duane McPherson, Sergeant Rodney Rogers and Lieutenant Louis Weber, the three named defendants, move this Court for an order pursuant to Rule 56 of the Federal Rules of Civil Procedure, granting summary judgment in their favor, and dismissing the false arrest and malicious prosecution claims. McPherson has not moved for summary judgment on the excessive force claim, which is directed solely at him.

Plaintiff does not oppose summary judgment as to Lieutenant Weber and Sergeant Rogers. Indeed, plaintiff specifically withdraws her action as against these defendants. (*See* Plaintiff's Rule 56.1 statement). Accordingly, the complaint is dismissed as to defendants Weber and Rogers. Because the time for amending

the complaint to add "John Doe" defendants has long since past, the complaint is dismissed as to all John Does.

Plaintiff does, however, oppose McPherson's motion for summary judgment on the false arrest and malicious prosecution claims. As part of her response, she asks the Court to exclude from its consideration Defendant's moving exhibits A and C, and paragraph 9 of McPherson's affidavit. Plaintiff also seeks an order "barring defendant from introducing any evidence [at trial] regarding the time that McPherson or the New York State Police accessed the New York State Police Information Network (N.Y.SPIN) and National Criminal Information Center (NCIC) computers prior to 1659 hours (4:59 p.m.) on October 3, 1998 in order to obtain warrant information regarding plaintiff." (See Plaintiff's Omnibus motion at 1). Plaintiff states that, if the Court denies her motion to exclude evidence, she "will withdraw her action and seek alternative relief in the nature of sanctions."

*The Facts*

On October 3, 1998 at approximately 3:45 p.m., Flor Vasquez was driving her car, a 1980 Volvo station wagon west bound on Route 287 in the vicinity of Port Chester, New York. As Vasquez was driving, she felt something in her eye and pulled over to the side of the road to rest and see if her eye would feel better. (Vasquez Aff. at ¶ 11).

On October 3, 1998, defendant McPherson was employed as a New York State Trooper at the State Police Barracks in Tarrytown, New York. At approximately 4:00 p.m. on that day, while driving on patrol on Interstate 287, McPherson observed a green Volvo station wagon bearing State of New York plates U225TB, parked on the right shoulder of the roadway in the Village of Port Chester, New York. (McPherson Aff. ¶ 4). McPherson

pulled his vehicle onto the shoulder and parked directly behind the Volvo to further investigate. *Id.* at ¶ 5.

McPherson approached the vehicle on the driver's side and observed a white female (later identified as plaintiff) who appeared to be asleep in the driver's seat. Id. at ¶ 4. He tapped on the window to get plaintiff's attention. When plaintiff opened her eyes, McPherson noticed that they were red—which is not inconsistent with plaintiff's testimony that she pulled her car off the road because something was bothering her eye. (Vasquez Aff. at ¶ 5).

According to Vasquez, McPherson started to look around her car in a very suspicious way. *Id.* at ¶ 6. He also asked in a "forceful tone" for Vasquez's license. After Vasquez gave McPherson her license, the Trooper returned to his car. *Id.*

A few minutes later, McPherson returned to the side of Vasqez's car and demanded her registration. *Id.* at ¶ 8. Vasquez asked McPherson what happened, to which McPherson replied, "Don't ask me questions. Give me your registration." *Id.* When Vasquez finally found her registration in her wallet, McPherson had already returned to his car. *Id.* at ¶ 9. Vasquez got out of her car and began to walk toward McPherson's car so she could provide him with her registration. McPherson left his car at that point and met Vasquez before she could reached his car. She again asked, "What happened?" After Vasquez handed McPherson her registration he told her that he was going to arrest her. Incredulous, Vasquez asked why she was being arrested. McPherson told her not to ask questions, and that he would tell her later. In response to that statement, Vasquez claims she told McPherson, "If you're going to arrest me I

could sue you. You don't have any reason." *Id.* at ¶ 9.

Vasquez alleges that McPherson proceeded to hit her in the chest, hit her in the leg and throw her to the ground face first. He then pulled her by the hair, rolled her over, put his foot on her chest and handcuffed her. *Id.* at ¶ 11. After she was handcuffed, McPherson pulled her up by the hair and grabbed her arm and threw her in the front seat of his police vehicle. *Id.* Once Vasquez was in the police vehicle, McPherson allegedly searched the console and underneath the carpet of the car. *Id.*

McPherson claims that, when he first approached Vasquez, he asked her if she was okay, to which plaintiff purportedly replied, "Yes, I was just resting. Why do you ask?" McPherson says he believed the plaintiff had a Spanish accent and appeared to be irritated by his question. He told her that he wanted to ensure that she was safe and not in need of assistance. *Id.* at ¶ 7. When he asked plaintiff for her driver's license and registration, she became argumentative, hostile and defensive and insisted that she had done nothing wrong. *Id.* at ¶ 8.

After several requests, plaintiff produced a New York State drivers license with the name Flor Vasquez, DOB 9/20/63, 340 King St. Port Chester, New York 10573. McPherson returned to his car and radioed New York dispatch for a Department of Motor Vehicle ("DMV") inquiry. Headquarters advised him that plaintiff's information came back as a "file 5 association hit." According to McPherson, the common factors of a "file 5" in this case were the same for the last name, date of birth, height, hair, and eye color. He was further advised that the warrant was issued for immigration violations by the United States Border Patrol in Marfa, Texas, and that the driver's license was

valid. *Id.* at ¶ 9; Def's. Exh. A and C. This is the evidence that plaintiff seeks to have excluded.

Vasquez approached McPherson's vehicle with her registration. McPherson began to ask her questions in order to gather sufficient information to either confirm or deny the "hit." Plaintiff's tone of voice was loud, hostile, and argumentative and she insisted that she had done no wrong. *Id.* at ¶ 10.

McPherson advised her that if she could not provide information to establish her identity, she would be taken into custody. At that point, plaintiff shouted, "You arrest me, I shoot you, I shoot you." *Id.* at ¶ 11.

McPherson states that he became concerned for his personal safety and placed plaintiff under arrest and attempted to handcuff her. Plaintiff immediately resisted and began to struggle. During the struggle, plaintiff fell to the ground next to the passenger side of his vehicle. She fell face up and started to kick McPherson. McPherson immediately placed handcuffs on Vasquez, and placed her in the front passenger seat of his vehicle and applied the seatbelt. *Id.* at ¶ 12. While in the Trooper vehicle, Vasquez was kicking the radio unit and screaming. McPherson advised Headquarters of the incident and requested back-up. *Id.* at ¶ 13.

When another Trooper arrived on the scene, plaintiff was re-handcuffed with her hands behind her back. McPherson performed a cursory search of her vehicle and contacted a tow truck company to tow plaintiff's vehicle. *Id.* at ¶ 14. McPherson advised plaintiff of her *Miranda* rights and transported her to the State Police Barracks in Tarrytown for processing. *Id.* at ¶ 15.

Back at the Barracks, McPherson and Sgt. Malaterra questioned plaintiff. Plain-

tiff stated that she is a citizen of Colombia and came to the United States through the Miami Port. She stated that she had never been in Texas. Indeed, plaintiff proved not to be the person wanted by the Border Patrol in Marfa, Texas.

Plaintiff was ultimately charged with resisting arrest and disorderly conduct. *Id.* at ¶ 16.

While Plaintiff was at the police barracks, she was allowed to use the bathroom and telephone. Plaintiff contacted her husband, Ramon Vasquez. McPherson spoke to plaintiff's husband and advised him of the procedures to follow in order to obtain her release. *Id.* at ¶ 17. McPherson transported plaintiff to the Village of Port Chester Court for arraignment before Justice Peter Sisco. Plaintiff was arraigned. She posted $500 bail and was released. *Id.* at ¶ 18. Plaintiff's criminal case ended when she accepted an adjournment in contemplation of dismissal. (Vasquez Dep. at 74–75).

*Plaintiff's Motion to Exclude and for Sanctions*

Plaintiff does not refute the arguments raised in defendants' summary judgment motion. Instead, she has filed motions asking the Court to: (1) exclude from its consideration defendants' exhibit A (computer generated radio log for October 30, 1998) and exhibit C (handwritten log pages) and paragraph 9 of McPherson's affidavit, and (2) preclude defendant from introducing any evidence "regarding the time that defendant McPherson obtain warrant information regarding plaintiff." (See Plaintiff's Omnibus motion at 1). As noted above, Plaintiff states that, if the Court denies her motion to preclude the introduction of this evidence, she "will withdraw her action and seek alternative relief in the nature of [monetary] sanctions." *Id.*

Plaintiff willingness to withdraw her action if her motion to exclude is denied suggests that she agrees that the challenged evidence shows that McPherson had probable cause to arrest Vasquez. And she should, because the challenged evidence proves that McPherson was informed of the "File 5 association hit" prior to his arrest of plaintiff. What plaintiff is asking the Court to do is to ignore critical and highly probative (actually, determinative) evidence so that she can maintain her action. This the Court cannot do.

Plaintiff argues that paragraph 9 of McPherson's affidavit and the attached exhibits are all inadmissible under Fed. R.Evid. 802, 901 and 1002. In paragraph 9, McPherson states how he was informed by Headquarters prior to arresting plaintiff that her pedigree information came back as a "File 5 association hit." (McPherson at ¶ 9). Exhibit A (the radio log) and Exhibit C (handwritten log pages) corroborate defendant's position that Headquarters informed him of the warrant hit prior to arresting plaintiff.

■ Plaintiff contends that the challenged exhibits are "unauthenticated hearsay." Contrary to plaintiff's assertion, however, the challenged evidence is admissible. The radio logs and the transmission transcript are business records that would be admissible at trial pursuant to Fed. R.Evid. 803. It is entirely proper for the Court to consider these documents in the form presented in defendants' summary judgment motion. Indeed, these exhibits, along with the State Police log and the NYSPIN computer print out—which, collectively, show that McPherson was aware of the warrant hit prior to arresting plaintiff—would all be admissible at trial as business records.

■ McPherson's statements in paragraph 9 are also admissible. Obviously McPherson has personal knowledge of the

events in question. His statements about what "Headquarters" told him are admissible. Indeed they are not hearsay, because they are not offered for the truth of the matter asserted, but to explain why he did what he did. Even if Headquarters provided McPherson with erroneous information, the fact that McPherson was told there might be an outstanding warrant is relevant to whether a reasonable officer in McPherson's position had reason to believe that plaintiff had committed a crime, and also whether McPherson is entitled to qualified immunity. At trial McPherson would be able to testify that Headquarters told him that Vasquez's information came back as a "File 5 association hit."

■ Regardless of whether the challenged evidence is admissible under the Federal Rules of Evidence, plaintiff contends that any evidence regarding the time McPherson learned of the warrant should be precluded at trial, pursuant to Fed. R.Civ.P. 37(b)(c). Apparently, the information was not produced to plaintiff during discovery. Plaintiff contends that if defendants had produced the radio log, radio transcripts and NYSPIN reports early on during discovery, she would not have pursued this action and thereby incurred more than $15,000 in fees and expenses. Plaintiff characterizes defendants' failure to produce these documents as "negligent, if not reckless."

Rule 37(c) provides for sanctions where a party refuses to disclose information. The Court finds that there was no such refusal in this case. The history of pretrial discovery in this case, as set forth by the parties, suggests that the defendants complied with plaintiff's request for discovery by responding to interrogatories and providing some of the documents plaintiff sought. It appears that defendants objected to certain interrogatories and particular document requests—documents that both

sides now agree show that McPherson learned of the existence of the warrant prior to arresting Vasquez on the grounds that the requested information was public knowledge and information that could be subpoenaed from the New York State Police. Had the matter been brought to the attention of either this Court or the magistrate judge assigned to supervise discovery, I am sure that defendants would have been told to produce the documents, but plaintiff did not see fit to use the mechanisms provided in the Federal Rules of Civil Procedure to try to resolve the discovery dispute. Neither did plaintiff subpoena the State Police. Finally, plaintiff could have also deposed McPherson to find out what the trooper knew and when he learned it. She did not do so, however, even though defendants were made available for depositions on two occasions.

Accordingly, plaintiff's motion for preclusion and/or sanctions is denied.

*McPherson's Summary Judgment Motion*

Plaintiff having withdrawn her claims against Lieutenant Weber and Sergeant Rogers, the only motion remaining for the Court to decide is that of Trooper McPherson. McPherson asks the Court to grant summary judgment in his favor on plaintiff's claims of false arrest and malicious prosecution. The motion is granted.

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In addressing a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." *Matsushita Elec.*

*Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Whether any disputed issue of fact exists is for the Court to determine. *Balderman v. United States Veterans Admin.,* 870 F.2d 57, 60 (2d Cir.1989). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998). Moreover, not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson,* supra, 477 U.S. at 248, 106 S.Ct. 2505.

To defeat summary judgment, the non moving party must produce evidence of such weight that "a jury would return a verdict for that party. . . . If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249, 106 S.Ct. 2505 (citations omitted). While the Court must view the record "in the light most favorable to the non-moving party," *Leberman v. John Blair & Co.,* 880 F.2d 1555, 1559 (2d Cir. 1989) (citations omitted), and "resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought," *Heyman v. Commerce and Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975) (citations omitted), the non-moving party nevertheless "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted).

(1) False Arrest

■ The elements of a claim of false arrest under § 1983 are "substantially the same" as the elements of a false arrest claim under New York law. *See Hygh v. Jacobs,* 961 F.2d 359, 366 (2d Cir.1992). Under New York law, "a plaintiff claiming false arrest must show, inter alia, that the defendant intentionally confined him without his consent and without justification." *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996).

■■ The existence of probable cause to arrest is a complete defense to a false arrest claim, whether under state law or under § 1983. *See Weyant,* 101 F.3d at 852. "Courts evaluating probable cause must consider those facts available to the officer at the time of the arrest and immediately before it." *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 569 (2d Cir. 1996). Probable cause exists when there are "facts and circumstances 'sufficient to warrant a prudent man that the [suspect] had committed or was committing an offense.'" *Id.* (quotations omitted); *see Dunaway v. New York,* 442 U.S. 200, 208, n. 9, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) (probable cause to arrest exists when police officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.)

■ Whether probable cause existed is a question that may be determined as a matter of law on a motion for summary judgment if there is no dispute with regard to the pertinent events and knowledge of the officers. *Weyant,* 101 F.3d at 852.

Here, defendant has the burden to establish that he had probable cause. *See Raysor v. Port Auth. of New York & New Jersey,* 768 F.2d 34, 40 (2d Cir.1985); *Wu v. City of New York,* 934 F.Supp. 581, 586 (1996). To meet his burden, defendant must show, by admissible evidence, that he had a quantum of evidence "more than rumor, suspicion, or even a strong reason to suspect." *Wu,* 934 F.Supp. at 586 (*quoting United States v. Fisher,* 702 F.2d 372, 375 (2d Cir.1983)). Because arrests cannot be based on mere suspicion, *see Wagner v. County of Cattaraugus,* 866 F.Supp. 709, 714 (W.D.N.Y.1994) (*quoting Papachristou v. City of Jacksonville,* 405 U.S. 156, 159, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972)), the facts relied upon by an arresting officer must not be susceptible of an innocent or ambiguous explanation. *See Roberts v. City of New York,* 753 F.Supp. 480, 483 (S.D.N.Y.1990).

■ There is no disputed issue of material fact in the instant case—McPherson had probable cause to arrest plaintiff. Prior to arresting plaintiff, McPherson learned that a person answering to her name and description, and with the same date of birth that appeared on plaintiff's driver's license, was the subject of an outstanding arrest warrant for immigration violations. When McPherson was not able to satisfy himself that plaintiff was not the person named in the warrant—and according to both the plaintiff and the defendant, Vasquez responded to his inquiries with hostility and threats or some sort, either to sue or to shoot—he had ample reason to conclude that she was in fact the person named in the warrant and to arrest her and take her in for further questioning. *United States v. Towne,* 870 F.2d 880, 884 (2d Cir.1989) (finding probable cause to arrest where officer learned of out-of-state warrant after conducting a background check on NCIC, contacted out-of-state authorities to confirm warrant, and requested and received certified copy of warrant before arresting the defendant); *United States v. Hines,* 564 F.2d 925, 927 (10th Cir.1977); *Scull v. New Mexico,* 236 F.3d 588, 599 (10th Cir.2000) (because the officials "believed they had the lawful authority to imprison [defendant] based on the NCIC hit", defendant could not show that they "knew that they had no lawful authority" to imprison him for purposes of his false imprisonment claim); *Brooks v. George County,* 84 F.3d 157, 167 n. 12 (5th Cir.1996) (noting that "NCIC printouts provide a reliable basis for probable cause to arrest"); *United States v. Roper,* 702 F.2d 984, 989 (11th Cir.1983) (finding probable cause to arrest where officer radioed NCIC and learned of warrant); *United States v. McDonald,* 606 F.2d 552, 553–54 (5th Cir.1979) ("While NCIC printouts are not alone sufficient [e]vidence to permit [c]onviction, the cases uniformly recognize that NCIC printouts are reliable enough to form the basis of the reasonable belief which is needed to establish probable cause for arrest.") (footnote omitted); *United States v. Davis,* 568 F.2d 514, 516 (6th Cir.1978) ("An NCIC identification of a vehicle is sufficient to establish probable cause for the arrest of one possessing it ...."); *United States v. Palmer,* 536 F.2d 1278, 1283 (9th Cir.1976) (concluding that probable cause existed for the defendant's arrest based on information obtained from NCIC and other evidence suggesting that the defendant was, in fact, the suspect identified on NCIC). At the very least, it was not objectively unreasonable for McPherson to conclude that a woman named Flor Vasquez, who had the same birth date and physical characteristics as the plaintiff, was the woman named in the warrant, thus entitling him to qualified immunity as a matter of law. *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

That the further questioning revealed that Vasquez was NOT the person named in the warrant does not in any way render the arrest unconstitutional. *See Hill v. California,* 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971); *Patton v. Przybylski,* 822 F.2d 697 (7th Cir.1987)(Posner,J)(State policeman had not acted unreasonably in arresting driver stopped for alleged traffic violation whose race, name, and year of birth matched that of person sought in outstanding warrant even though arrestee's driver's license bore different address and birth date from those of person sought; policeman was thus exonerated from liability for deprivation of arrestee's civil rights). Neither does the fact that plaintiff was ultimately charged with a crime different from the one on suspicion of which she was arrested—a crime for which she cannot sustain a claim of malicious prosecution, given the disposition (*see* below).

The affidavit of plaintiff's expert witness, John M. McNicholas, a former New York City Detective, who purports to be an expert in reading and interpreting printouts related to NYSPIN and NCIC, does nothing to undermine the fact that McPherson learned of the outstanding warrant at 15:59 hours.[1] All that the McNicholas affidavit proves is that there was a subsequent inquiry of the NCIC system at 1659 (back at the State Police Barracks)-not that the 15:59 inquiry never occurred.

Plaintiffs' cause of action, for false arrest, is dismissed.

### (2) Malicious Prosecution

There are no disputed issues of fact to be resolved with respect to the malicious prosecution claim, either. Plaintiff and defendant agree that the underlying criminal prosecution terminated when Ms. Vasquez accepted an "adjournment in contemplation of dismissal." (Vasquez Dep. at 74–75). An essential element of a malicious prosecution claim is that the prosecution terminate "in some manner indicating that the person was not guilty of the offense charged." *Singleton v. City of New York,* 632 F.2d 185, 194–95 (2d Cir. 1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). A disposition of an "adjournment in contemplation of dismissal" is not a favorable termination for the purposes of maintaining a claim for malicious prosecution. *Murphy v. Lynn,* 118 F.3d 938, 949 (2d Cir.1997) (dismissals such as an "adjournment in contemplation of dismissal" are not to be deemed favorable to the accused for purposes of malicious prosecution claim). Because plaintiff is unable to prove an essential element of her malicious prosecution claim, that claim is dismissed as well.

### CONCLUSION

Notwithstanding plaintiff's assertion that she would withdraw her complaint and seek "sanctions" if the disputed evidence were admitted, I remind her that she retains one triable claim—her claim of excessive force, as to which Trooper McPherson made no motion for summary judgment. Plaintiff has thirty days to withdraw this claim if she intends to do so, but I remind plaintiff that at this point in

---

**1.** It is defendant's position that the Court should not even consider the McNicholas affidavit in determining this motion because it was submitted in violation of Fed.R.Civ.P. 26. Defendant argues that discovery had been complete for over a year when the expert affidavit was proffered, defendant was not provided with an opportunity to take McNicholas' deposition, and plaintiff did not provide defendant with an expert report. While I agree that there appears to be violations of Rule 26, the better course of action here is for the Court to resolve this motion entirely on the merits.

the litigation she can only do so (1) by stipulation with her opponent, or (2) with the consent of the Court, which I will only give if the claim is withdrawn with prejudice. No other "terms and conditions" would be just in the circumstances. Fed. R.Civ.P. 41(b).

If plaintiff does not withdraw her excessive force claim, the parties are directed to appear for a final pre-trial conference on October 31, 2003 at 12:00PM. Thereafter they are on 48 hours notice for trial.

This constitutes the decision and order of the Court.