Steven WU, Plaintiff,

v.

CITY OF NEW YORK, Millard Carson, Individually and in his official capacity, Captain Robert D. Humes, Individually and in his official capacity, Sergeant Nicholas Santoro, Individually and in his official capacity, Steven Ziegler, Individually and in his official capacity, Joseph Monahan, Individually and in his official capacity, Defendants.

No. 93 Civ. 2647 (CSH).

United States District Court, S.D. New York.

July 22, 1996.

Asian American Legal Defense and Education Fund, New York City (Elizabeth R. OuYang, of counsel), for Plaintiff.

Paul A. Crotty, Corporation Counsel, The City of New York, Law Department, New York City (Barbara R. Keller, of counsel), for Defendant.

## MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge:

Plaintiff in the above-captioned matter has sued the City of New York and several New York City Police and Transit Officers for violations of his federal civil rights pursuant to 42 U.S.C. §§ 1981 and 1983 and for state law violations including false arrest, malicious prosecution, and intentional infliction of emotional distress. The case is before the Court on cross-motions for summary judgment.

### FACTS

On the evening of March 3, 1992, Steven Wu drove to La Guardia Airport to pick up a friend, Junie Lim, who had flown to New York for a job interview. Wu was a 23–year–old Chinese–American and an associate programmer analyst at the investment banking firm of Goldman Sachs & Co.

At approximately 8:15 p.m., Wu parked his car at a metered spot on 52nd Street and Seventh Avenue, near the Sheraton Hotel. Wu accompanied Lim as she checked into the hotel; the two then returned to the car at approximately 8:30 p.m., planning to proceed to dinner.

At the car, Wu and Lim encountered Department of Transportation Agent Millard Carson, who was dressed in uniform and issuing a parking ticket. According to Wu and Lim, and undisputed by the moving defendants, Wu attempted to discuss the ticket with Carson, who responded "Fuck you, Chink. Don't tell me what to do. You think you Chinks have money so you can do whatever you want." Wu Dep. at 17; Lim Aff. at ¶ 7; Lim Dep. at 18–19.

Wu and Lim allege that Carson then began to bump Wu's chest with his chest, challenging Wu to start a fight so that Carson could have him arrested. Lim Aff. at ¶ 8; Wu Dep. at 21; Lim Dep. at 21. According to Wu and Lim, Carson repeatedly bumped Wu and then shoved Wu with his hands, knocking him backwards to the ground. Lim Aff. at ¶ 9; Wu Dep. at 22; Lim Dep. at 20–21. Again, the moving defendants do not dispute this version of the events.

Wu, who was carrying a cellular telephone, immediately placed a 911 telephone call. He reported to the 911 operator that "I have a problem here. A traffic officer just shoved me. And I need police assistance right now." Plaintiff's Exh. C, Transcript of 911 Call ("911 Tr.") Wu then reported that "this traffic officer just pushed me in the chest and he pushed me pretty hard," and that "now he's trying to say that I pushed him, which is totally incorrect." *Id.* Wu requested an ambulance. At approximately the same time, Carson radioed a Department of Transportation supervisor, explaining that he was being assaulted but that he was not injured. Plaintiff's Exh. C.

Shortly thereafter, Police Officers Steven Ziegler and Joseph Monahan arrived at the scene of the incident. There is some dispute as to who spoke with whom at this point. Officer Ziegler says he spoke to Carson and Wu, both of whom claimed to have been struck in the chest by the other. Ziegler Dep. at 13, 18. Wu states that although he repeatedly attempted to describe the events to the police officers, the officers told him to "back off" and refused to listen to him or to take notes of anything he said. Wu Dep. at 34–39. According to Lim, when Wu attempted to tell the officers what had happened they told Wu to "back off" and brushed him aside in order to hear Carson's version of the events. Lim Dep. at 27–28, 30. The moving

defendants do not specifically contradict this account.

At this point, Officer Ziegler radioed for Sergeant Santoro, who arrived shortly thereafter. Officer Monahan remembers telling Sergeant Santoro Carson's version of the events; neither he nor Officer Ziegler can remember whether they relayed Wu's version of the incident. Monahan Dep. at 19; Ziegler Dep. at 27.

Wu and Carson were examined by personnel from the ambulance that had arrived on the scene. After Wu emerged from the ambulance, he was placed under arrest. Lim states that she asked the police officers "Doesn't what I saw count? Why are you arresting him?" and was told "that's what happens when you go against a government employee." Lim Dep. at 32; Lim Aff. at ¶ 15.

Wu was taken to the Midtown North Precinct and then to Central Booking. He remained incarcerated for over 24 hours, and was arraigned at approximately midnight on March 4, 1992. Wu was then released from custody without bond. All charges against him were dismissed on March 31, 1992.

When Wu returned to work, the Goldman Sachs personnel and security departments interviewed him and informed him that he would have to file forms with the SEC to notify the agency of his arrest. Wu Dep. at 126. Wu alleges that the arrest thereby generated uncertainty about his future at Goldman Sachs. Wu Dep. at 126.

Wu alleges that he was arrested pursuant to New York Police Department Patrol Guide 116–43, which governs "Incidents Involving Enforcement Personnel of Other Agencies" ("Patrol Guide 116–43" or "the patrol guide"). Patrol Guide 116–43 instructs that

> If an agent of one of the above listed agencies wants to make an arrest claiming he was assaulted, harassed or the subject of any other crime, the uniformed member of the service will assist in the arrest and take the prisoner into custody. The agent will be the complainant.

Patrol Guide 116–43 at 2. The patrol guide explicitly applies to parking enforcement and traffic control agents.

Wu argues that this guide is unconstitutional and that his arrest violated his civil rights pursuant to 42 U.S.C. § 1983. The moving defendants respond that the patrol guide is constitutional and that Wu has no standing to challenge the guide because the police officers had probable cause to arrest him. Wu and defendants Santoro, Ziegler, Monahan, and the City of New York cross-move for summary judgment.

### DISCUSSION

#### I. *Motion to Amend*

■ Wu moves to amend his complaint to incorporate the challenged patrol guide into the complaint. Defendants oppose this motion, arguing that the amendment is futile because the patrol guide does not constitute a written policy which can provide a basis for municipal liability. Defendants' Reply Mem. at 9.

■ Under federal rules, a party may amend its pleading by leave of the Court, which leave "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The purpose of Rule 15(a) is to encourage disposition of litigation on the merits. *Sanders v. Thrall Car Mfg. Co.*, 582 F.Supp. 945, 952 (S.D.N.Y.1983), *aff'd* 730 F.2d 910 (2d Cir. 1984).

In *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), the Supreme Court provided district courts with guidance in exercising their discretion pursuant to Rule 15(a). The *Foman* Court advised that:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Id.*

The moving defendants maintain that plaintiff's requested amendment is futile. I

disagree, for reasons that are obvious from the following discussion of probable cause, and therefore grant plaintiff's motion to amend.

## II. *Standing and Probable Cause*

■ Before this Court can consider the constitutionality of the challenged police patrol guide, Wu must demonstrate that he has standing to challenge that guide. Standing exists if a plaintiff can demonstrate (1) concrete injury-in-fact, (2) a causal connection between the injury and the challenged conduct, and (3) that a favorable decision will likely redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351 (1992).

Wu must therefore demonstrate, first, that he was injured by his arrest and, second, that there is a causal link between his injury and Patrol Guide 116–43. This in turn requires convincing the Court that Officers Santoro, Ziegler, and Monahan did not have probable cause to arrest Wu and would not have done so if not for Patrol Guide 116–43.

### A. *Legal Standards of Probable Cause*

■ Under the Fourth Amendment, a warrantless arrest is constitutionally valid only if the arresting officers had probable cause to make the arrest at the time of the arrest. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225–26, 13 L.Ed.2d 142 (1964); *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).[1] As explained by the Second Circuit,

> The quantum of evidence required to establish probable cause to arrest need not reach the level of evidence necessary to support a conviction, but it must constitute more than rumor, suspicion, or even a

"strong reason to suspect." Although the existence of probable cause must be determined with reference to the facts of each case, in general probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that (1) an offense has been or is being committed (2) by the person to be arrested.

*United States v. Fisher*, 702 F.2d 372, 375 (2d Cir.1983) (citations omitted). *See Calamia v. City of New York*, 879 F.2d 1025, 1032 (2d Cir.1989). In determining probable cause, "facts relied upon must not be susceptible to innocent or ambiguous explanation." *Roberts by Roberts v. City of New York*, 753 F.Supp. 480, 483 (S.D.N.Y.1990). Blanket policies that disregard probable cause requirements have been held to violate the Fourth Amendment. *Weber v. Dell*, 804 F.2d 796 (2d Cir.1986), *cert. denied*, 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987) (declaring unconstitutional jail policy subjecting inmates to routine strip searches); *Hurlman v. Rice*, 927 F.2d 74, 79–80 (2d Cir.1991) (child custody order could not provide police blanket authorization to enter private home).

■ A warrantless arrest is presumptively invalid, and the government bears the burden of proving probable cause for an arrest effected without a warrant. *United States v. Rivera*, 321 F.2d 704, 708 (2d Cir.1963); *Roberts by Roberts v. City of New York*, 753 F.Supp. 480, 483 (S.D.N.Y.1990); *Smith v. County of Nassau*, 34 N.Y.2d 18, 355 N.Y.S.2d 349, 352, 311 N.E.2d 489, 491–92 (1974).

---

1. New York State requires a police officer to have reasonable cause before making an arrest:

   > a police officer may arrest a person for … a crime when he has reasonable cause to believe that such person has committed such crime, whether in his presence or otherwise.

   New York Criminal Procedure Law ("CPL") § 140.10(1)(b). Reasonable cause is defined as follows:

   > "Reasonable cause to believe that a person has committed an offense" exists when evidence or information which appears reliable discloses facts or circumstance which are collectively of

   such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that such offense was committed and that such person committed it.

   CPL § 70.10(2). New York's "reasonable cause" statutes have been held to have substantially the same meaning as "probable cause" under the Fourth Amendment. *Wong Sun v. United States*, 371 U.S. 471, 478 n. 6, 83 S.Ct. 407, 412 n. 6, 9 L.Ed.2d 441 (1963); *United States v. Fisher*, 702 F.2d 372, 375 n. 6 (2d Cir.1983); *Marin v. Viggiani*, 1993 WL 404098 at *8 n. 9 (S.D.N.Y.1993).

The moving defendants assert that Officers Ziegler, Monahan, and Santoro had probable cause to arrest Wu on March 3, 1992. They argue that under New York law a police officer can find probable cause to arrest based solely upon the complaint of an alleged eyewitness or victim. *See People v. Hayes,* 191 A.D.2d 644, 595 N.Y.S.2d 239, 240 (2 Dept. 1993) ("an eyewitness-victim of a crime can provide probable cause for the arrest of his or her assailant even though his reliability has not been established previously or his information corroborated"); *People v. Grams,* 166 A.D.2d 717, 561 N.Y.S.2d 296, 297 (2 Dept. 1990) ("police officers have a right to rely upon information furnished by private citizens who report crimes that they have witnessed or that were perpetrated against them. A police officer who acts upon such information possesses probable cause to arrest and search an individual accused by the named citizen.") (citations omitted).

██ The Second Circuit and other federal courts in this circuit and in others do not follow this doctrine. In *Oliveira v. Mayer,* 23 F.3d 642 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995), the Court of Appeals ruled that "information about criminal activity provided by a single complainant can establish probable cause when that information is sufficiently reliable and corroborated. Yet, even if bystander witnesses are considered presumptively reliable, a report of a crime alone will not necessarily establish probable cause." 23 F.3d at 647, *citing Fuller v. M.G. Jewelry,* 950 F.2d 1437, 1444 (9th Cir.1991) (before making an arrest, "police officers had a duty to conduct an investigation into the basis of the witness' report"). Lower courts in this district also require some independent corroboration before elevating the word of an eyewitness or victim to the status of probable cause. "When a putative victim precisely identifies the alleged perpetrator of a crime and there is independent corroborative evidence to support at least some of the victim's assertions, a person of reasonable caution is warranted in believing that an offense has been committed by the alleged perpetrator." *Marin v. Viggiani,* 1993 WL 404098 at *8 (S.D.N.Y.1993). Similar reasoning was applied in *Miloslavsky v. AES Engineering*

*Soc., Inc.,* 808 F.Supp. 351, 355 (S.D.N.Y. 1992), *aff'd,* 993 F.2d 1534 (2d Cir.1993), *cert. denied,* 510 U.S. 817, 114 S.Ct. 68, 126 L.Ed.2d 37 (1993), in which the Court ruled that "[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth." *See also BeVier v. Hucal,* 806 F.2d 123, 128 (7th Cir.1986) ("A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest. Reasonable avenues of investigation must be pursued especially when ... it is unclear whether a crime had even taken place.") The law in the circuit is, therefore, that uncorroborated allegations by an eyewitness or victim do not necessarily establish probable cause. On the contrary: Second Circuit case law stresses the importance of investigation and corroboration.

### B. Did the Officers Have Probable Cause to Arrest Wu?

The parties in this case have presented cross motions for summary judgment on the question of whether Officers Ziegler, Monahan, and Santoro had probable cause to arrest Wu.

██ Under Fed.R.Civ.P. 56(c), a moving party is entitled to summary judgment if the moving papers "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In considering such a motion, "a court's responsibility is to assess whether there are any material factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.,* 933 F.2d 162, 167 (2d Cir.1991). The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The non-movant cannot 'escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts,' or defeat the motion through 'mere speculation or conjecture.'" *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d

118, 121 (2d Cir.1990) (citations omitted). The party resisting summary judgment must demonstrate a material factual dispute in light of the substantive law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A summary judgment motion as to the existence of probable cause for an arrest is governed by these same standards. "Where the defense of probable cause is based on conflicting evidence, the question is resolved by the jury, but where the facts leading up to the arrest are undisputed, the existence of probable cause is for the court to determine as a matter of law." *Coleman v. City of New York*, 182 A.D.2d 200, 588 N.Y.S.2d 539, 541 (1 Dept. 1992). Additionally, "the existence of competing accounts cannot of itself render the issue of probable cause a jury question." *Collom v. Incorporated Village of Freeport, N.Y.*, 691 F.Supp. 637, 640 (E.D.N.Y.1988). As explained in *Collom*, "the question is not whether a given account contains the necessary quantum of evidence to support an arrest, but which account is to be believed." 691 F.Supp. at 640. Although the *Collom* Court used this analysis in the context of ruling that probable cause existed as a matter of law, its logic is equally applicable to a case in which a court is convinced that, as a matter of law, police officers did not have probable cause to arrest.

This is such a case. Although there are some factual discrepancies in the parties' factual descriptions of the evening of March 3, 1992, the moving defendants do not dispute the majority of the plaintiff's important factual allegations. I therefore find that, as a matter of law, Officers Ziegler and Mona-

han and Sergeant Santoro had no probable cause to arrest Wu on March 3, 1992.

The undisputed facts of this case lead me to this conclusion. The police officers arriving at the scene of the incident were responding to a 911 telephone call placed by Wu. Wu had told the 911 operator that he had been pushed by a transit officer, that he needed an ambulance, and that the transit officer was now denying having pushed him. Carson had also radioed for backup, but had informed the operator that he was "not injured." Plaintiff's Exh. C. Officer Ziegler has testified that he found Wu to be credible, coherent, well-dressed and well-spoken. Ziegler at 21–22. Yet Officers Ziegler and Monahan focused their attention almost exclusively on Officer Carson, crediting his version of events and disregarding the contrary accounts of Wu and Lim, both of whom had witnessed the incident.[2] Sergeant Santoro spoke with Officer Ziegler; he cannot remember whether he spoke with Wu. Carson told the officers that he had been injured by Wu, but the ambulance attendant who examined Carson found "no trauma." Plaintiff's Exh. J. By contrast, after examining Wu the ambulance attendant recorded "soreness noted upon palpation of anterior chest wall." Plaintiff's Exh. I.

Wu was arrested for third degree assault, a crime which requires a finding that Wu caused "physical injury" to another. New York Penal Law ("NYPL") § 120.00.[3] New York defines "physical injury" as "impairment of physical condition or substantial pain." NYPL § 10.00(9). While actual impairment may not be necessary, New York courts have ruled that "petty slaps, shoves, kicks and the like delivered out of hostility, meanness and similar motives, are not within the contemplation of assault as defined in the Penal Law." *Matter of Shane T.*, 115

---

2. Carson's partner was in their D.O.T. car during the entire incident, but neither party has provided the Court with any testimony from that agent, nor did the moving defendants make any mention of her in their moving papers.

3. The New York Penal Code reads: "A person is guilty of assault in the third degree when:

1. With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or

2. He recklessly causes physical injury to another person; or

3. With criminal negligence, he causes physical injury to another person by means of a deadly weapon or a dangerous instrument.

NYPL § 120.00.

Misc.2d 161, 453 N.Y.S.2d 590, 592 (Fam.Ct. 1982); *Matter of Philip A.*, 49 N.Y.2d 198, 424 N.Y.S.2d 418, 419, 400 N.E.2d 358, 358–59 (1980) (same); *People v. Blacknall*, 185 A.D.2d 101, 585 N.Y.S.2d 729, 731 (1 Dept. 1992) (same). Given this requirement, Officers Ziegler and Monahan and Sergeant Santoro had no basis for finding probable cause that Wu had committed third degree assault.

Finally, my conviction that probable cause was absent is bolstered by the words of the arresting officers themselves. When asked how the March 3, 1992 incident would have differed had it involved two civilians, rather than Officer Carson, Officer Monahan stated that "well, what happened, I believe was a violation, did not occur in my presence, so I don't believe I would have placed him under arrest." Monahan Dep. at 29–30. When asked why he assumed the situation was a violation, Monahan responded "Due to the fact that I didn't see no visible injury to the D.O.T. officer and it did not occur in my presence, that's why it's a violation." *Id.* at 30. Counsel for Wu and Monahan then engaged in the following colloquy:

> Counsel: If it were a situation that did not involve a City official under the same facts and circumstances, if one person was saying, "He hit me," the other person is saying, "No, it was he who hit me," what would you do in that situation?
>
> \* \* \* \* \* \*
>
> Monahan: I would take two complaint reports, cross-complaints, and I would refer them to Court—adjudicated in the Court.
> Counsel: Would you arrest one or two of them, or make any arrest in that situation?
> Monahan: It depends if I saw injury to either one, then again, if there was none, I would refer—I would take two complaint reports, cross complaints, and refer it to Court, let the judge decide what happened.

Monahan Dep. at 31. With this statement, Officer Monahan effectively acknowledges that, given the absence of any identifiable injury to Officer Carson, Monahan would therefore not have arrested Wu had Carson not been a D.O.T. agent. Wu's deposition testimony corroborates this statement: he stated that Officers Ziegler and Monahan told him "that they can't believe that this is happening, and they said that the only reason why this is happening is because it involved a traffic officer." Wu Dep. at 63. These remarks are tantamount to admissions that the officers had no independent probable cause to arrest Wu on third degree assault charges.

Having considered all the facts available to me, and all the deposition testimony and affidavits provided by the parties, and noting that the burden of proving probable cause existed rests upon the defendants, I am convinced that the arresting police officers had no probable cause to believe that Wu had committed assault in the third degree. Rather, I believe that the officers arrested Wu pursuant to Patrol Guide 116–43, which mandated certain procedures in situations involving D.O.T. agents. I therefore conclude that Wu has standing to challenge the patrol guide. His arrest without probable cause constitutes injury-in-fact to him, and that injury was directly caused by the challenged policy.

## III. *Constitutionality of Patrol Guide 116–43*

■ Patrol Guide 116–43 governs "Incidents Involving Enforcement Personnel of Other Agencies" and became effective on February 3, 1984. The guide's final paragraph states that

> If an agent of one of the above listed agencies wants to make an arrest claiming he was assaulted, harassed or the subject of any other crime, the uniformed member of the service will assist in the arrest and take the prisoner into custody. The agent will be the complainant.

Patrol Guide 116–43 at 2.

Wu argues that this patrol guide is facially unconstitutional because it requires a police officer to arrest an individual whom a traffic agent "wants" arrested, regardless of whether or not probable cause exists to justify that arrest. Plaintiff's Mem. at 15–16. The moving defendants argue in response that

> The patrol guide is just that: a guide. Plaintiff does not allege, nor can such allegation be made, that the procedures set forth therein constitute mandatory rules

which must be followed without regard to particular circumstances encountered by the police in the performance of their duties.

Defendants' Reply Mem. 10 n. 5.

The defendants are mistaken. Not only can plaintiff make such an allegation, he *does* make that allegation. Furthermore, that allegation supplies the only reasonable interpretation of the language of Patrol Guide 116–43. The Patrol Guide is written in nondiscretionary language: if a traffic agent "wants" an individual arrested, the police officer "will" assist by taking the individual into custody. The guide makes no provision for a probable cause determination and provides no exception for the officer who discerns no probable cause for an arrest. The text of the Patrol Guide does not pose the question of whether a police officer may delegate a probable cause determination to a non-arresting D.O.T. officer, since the policy does not require the D.O.T. officer to find probable cause either. Nor do New York City police officers enact the policy in a discretionary fashion: when asked whether he could think of "any incidences [sic] where an arrest would not be made when a peace officer as a complainant is alleging someone assaulted him," Officer Ziegler replied that he could not. Ziegler Dep. at 62.

It would certainly have been possible for the defendants to argue that the New York Police Department applies Patrol Guide 116–43 as the second step in a two-step process, triggered only after a police officer has made a determination that probable cause of a crime exists. But the defendants have not taken that position, nor have they provided any documents that would substantiate such an argument. Instead, the Court is simply asked to uphold a policy that apparently mandates arrest without regard for probable cause.

Such a policy is simply unacceptable. The City of New York and the New York City Police Department may not adhere to procedures which allow the word of a traffic agent to trump the protections and safeguards of the Fourth Amendment of the United States Constitution. Our Constitution demands that a police officer find probable cause before making an arrest. Because Patrol Guide 116–43 eviscerates that requirement, I declare it unconstitutional.

## IV. *Liability*

The defendants argue that, even should the Court rule that Patrol Guide 116–43 violates the Fourth Amendment, they should not be held liable for their actions under the policy.

### A. *The Police Officers in Their Personal Capacities*

■ Officers Santoro, Ziegler and Monahan invoke the doctrine of qualified immunity to protect themselves from personal liability with respect to Wu's claims. The qualified immunity doctrine shields government officials performing discretionary functions from personal liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Washington Square Post # 1212 American Legion v. Maduro,* 907 F.2d 1288, 1290–91 (2d Cir.1990), *citing Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), so long as it is objectively reasonable for the officials to believe that they did not violate those rights. *Oliveira v. Mayer,* 23 F.3d 642, 648 (2d Cir.1994). Defendants are not protected by immunity if "it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

■ The question of immunity is distinct from that of probable cause, so a ruling that an officer had no probable cause to arrest does not necessitate a ruling that it was objectively unreasonable for the officer to make the arrest. *Mitchell v. Forsyth,* 472 U.S. 511, 527–29, 105 S.Ct. 2806, 2816–17, 86 L.Ed.2d 411 (1985); *Warren v. Dwyer,* 906 F.2d 70, 75 (2d Cir.1990), *cert. denied,* 498 U.S. 967, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990).

■ Given the facts of the case at bar, I hold that it was not objectively unreasonable for Officers Ziegler, Monahan, and Santoro to arrest Wu. The officers were obeying an official police department patrol guide. Recognizing that New York doctrine allows officers to find probable cause based solely upon the statements of crime eyewitnesses or victims, *see* discussion *supra*, it cannot be said that all reasonably competent officers would have concluded that Patrol Guide 116–43 was constitutionally invalid. The officers in this case did not violate a "clearly established right;" rather, their actions fell between the boundaries established by the somewhat different doctrines of the New York State courts and the Second Circuit courts. Additionally, given that the officers found Officer Carson to be a credible witness to the alleged crime, their arrest of Wu cannot be deemed objectively unreasonable behavior. Accordingly, Officers Ziegler, Monahan, and Santoro are shielded from liability in their personal capacity by the doctrine of qualified immunity.

### B. *New York City and the Police Officers in Their Official Capacities*

■ Wu also seeks damages against the City of New York and the arresting officers in their official capacities. The Supreme Court has ruled that "as long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); *Monell v. New York City Department of Social Services,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978). Since New York City is a named defendant in this suit and is moving to dismiss the claims against it, it clearly has adequate notice of the suit. The official capacity claims against the arresting officers will therefore be treated by the Court as effectively against New York City.

■ In *Monell,* the Supreme Court held that a municipality is a person for the purposes of 42 U.S.C. § 1983 and can incur liability pursuant to the statute. 436 U.S. at 690, 98 S.Ct. at 2035–36. A local government is liable under § 1983 only when the challenged actions "may fairly be said to represent official policy." *Id.* at 694, 98 S.Ct. at 2037–38. This requirement has engendered much case law concerning what conduct, including training or failing to train local officials, can be deemed official government policy and whether a single incident of unconstitutional activity can rise to the level of official policy. *See, e.g. City of Canton, Ohio v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Walker v. City of New York,* 974 F.2d 293, 297 (2d Cir.1992), *cert. denied,* 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993).

The case at bar raises no difficult questions on this score. This is a paradigmatic *Monell* case: Patrol Guide 116–43 is a formal, written policy of the New York City Police Department and the arresting officers were acting pursuant to that policy when they arrested Wu. The patrol guide may be fairly said to represent official policy, and the City is therefore liable for any damage done to Wu, as are the officers in their official capacities.

### V. *State Law Claims*

This Court has supplemental jurisdiction over state law claims "that are so related to claims in the [federal] action ... that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

### A. *False Arrest and Imprisonment*

■ Wu moves for summary judgment on his seventh cause of action against New York City for false arrest and imprisonment.

■ To support a claim of false arrest and imprisonment, Wu must show that (1) the arresting officer meant to confine him; (2) Wu was conscious of the confinement and did not consent to it; and (3) the confinement was not otherwise privileged. *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 569 (2d Cir.1996). Although *respondeat superior*

claims are barred against municipalities for § 1983 violations under *Monell*, such claims are available for violations of state law. *Raysor v. Port Authority of New York and New Jersey*, 768 F.2d 34, 38 (2d Cir.1985), *cert. denied*, 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986) (false arrest and malicious prosecution claims may proceed on *respondeat superior* theory); *Johnson v. Town of Colonie*, 102 A.D.2d 925, 477 N.Y.S.2d 513, 514 (3 Dept.1984) (common law cause of action may proceed on *respondeat superior* theory).

There can be no doubt that Wu has demonstrated the first two elements of a false imprisonment claim. As to the third, my ruling that the arresting officers had no probable cause to arrest Wu eliminates any privilege that might otherwise protect the arrest. Wu's summary judgment motion as to his seventh cause of action is granted.

### B. *Malicious Prosecution*

■ Wu also moves for summary judgment on his eighth cause of action against New York City for malicious prosecution.

■ To support a claim of malicious prosecution, Wu must show that (1) the defendant started a criminal proceeding against him; (2) the proceeding terminated in Wu's favor; (3) there was no probable cause for the proceeding; (4) the proceeding was instituted with malice. *Lowth*, 82 F.3d at 571. There can be no dispute as to the first two elements; the third was decided *supra*. Accordingly, the only remaining question is whether the defendants instituted the proceeding against Wu with malice.

■ Reading the facts before me at this time in the light most favorable to the defendants, I cannot determine, as a matter of law, whether the defendants acted with malice. The absence of probable cause bears on the issue of malice, and a jury may infer malice from an arrest for which probable cause was "totally lacking." *Martin v. City of Albany*, 42 N.Y.2d 13, 396 N.Y.S.2d 612, 614–15, 364 N.E.2d 1304, 1306–08 (1977). At this stage of this case, however, Wu has provided the Court with no evidence that his prosecution was instituted with malice on the part of New York City. Plaintiff's motion for summary judgment as to the eighth cause of action is denied.

### C. *Intentional Infliction of Emotional Distress*

The ninth cause of action of the second amended complaint includes a claim for intentional infliction of emotional distress against all of the named defendants. New York City and Officers Santoro, Ziegler, and Monahan move for summary judgment on that claim.

■ Liability for intentional infliction of emotional distress is predicated "on the basis of extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society." *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 490 N.Y.S.2d 735, 741, 480 N.E.2d 349, 355, (1985).

■ Wu has not demonstrated this level of outrageous conduct against Officers Santoro, Monahan, or Ziegler. The arresting officers did not transcend the bounds of decency in implementing Patrol Guide 116–43; as discussed above, their behavior was not even objectively unreasonable. Therefore, defendants motion for summary judgment is granted as to the three arresting officers.

■ However, I am not willing, at this stage, to grant defendant's motion as to New York City. Intent is a question of fact under New York law. *United States v. McCombs*, 30 F.3d 310, 328 (2d Cir.1994), and an intentional infliction of emotional distress claim is viable against the City under a theory of *respondeat superior* liability for Officer Carson's actions. Because Carson was not a moving defendant, the parties have provided the Court with no discussion of Carson's intent. Yet the facts as depicted by Wu could support an inference of intentional misdeeds by Carson. It is therefore premature to resolve this claim on summary judgment.

### *CONCLUSION*

Plaintiff's motion to amend his complaint is granted. Plaintiff is ordered to file and serve his second amended complaint within thirty days of the date of this Opinion.

Defendants' motion for summary judgment as to plaintiff's third cause of action is denied. Plaintiff's motion for summary judgment as to the third cause of action is denied as to Officers Santoro, Monahan and Ziegler in their personal capacities. Plaintiff's motion for summary judgment as to the third cause of action is granted as to the City of New York and as to Officers Santoro, Monahan and Ziegler in their official capacities.

Defendants' motion for summary judgment as to plaintiff's ninth cause of action for intentional infliction of emotional distress is granted as to Officers Santoro, Ziegler, and Monahan; it is denied as to New York City. Plaintiff's summary judgment motion on the seventh cause of action for false imprisonment is granted; his motion is denied as to the eighth cause of action for malicious prosecution.

Since Wu has removed from his second amended complaint the cause of action suing directly under the United States Constitution and his request for punitive damages against the City of New York, defendants' motions to dismiss those claims are now moot.

It is SO ORDERED.