**Earl BRUCE, Plaintiff,**

v.

**The PORT AUTHORITY OF NEW YORK AND NEW JERSEY and Jose A. Martinez, Defendants.**

**No. 05 CV 2639(NG)(KAM).**

United States District Court, E.D. New York.

Jan. 24, 2008.

---

Robert L. Boydstun, Gladstein & Issac, Ronald P. Berman, New York, NY, for Plaintiff.

Kathleen Gill Miller, The Port Authority of New York and New Jersey, New York, NY, for Defendants.

### Opinion & Order

GERSHON, District Judge.

Defendant Port Authority of New York and New Jersey ("Port Authority"), the only remaining active defendant in this case,[1] moves for summary judgment dismissing plaintiff's *respondeat superior* claims for battery, assault, false arrest, and false imprisonment.[2] Plaintiff alleges: (1) that defendant Jose A. Martinez assaulted him with a knife on the Goethals Bridge while Mr. Martinez was working as a toll collector for the Port Authority and (2) that, even though he was the victim of Mr. Martinez's attack, Port Authority police wrongfully detained and arrested him for four to five hours after Mr. Martinez's attack. Mr. Bruce asserts that there are two remaining issues of material fact for purposes of this motion: (1) whether Mr. Martinez's assault and battery was within the scope of his employment and (2) whether there was probable cause to arrest Mr. Bruce. For the reasons outlined below, the Port Authority's motion for summary judgment is granted with respect to Mr. Bruce's false arrest and false imprisonment claims and denied with respect to Mr. Bruce's battery and assault claims.

### FACTS

Unless otherwise indicated, the following facts are undisputed.

---

**1.** Defendant Martinez failed to answer Mr. Bruce's complaint or appear in this action, and on November 16, 2005, the court granted Mr. Bruce default judgment as to defendant Martinez.

**2.** At oral argument, plaintiff confirmed that he has withdrawn all other claims.

In the early morning hours of June 15, 2004, Mr. Bruce was driving a large truck carrying a shipment from Rhode Island to Staten Island. En route to his destination in Staten Island, Mr. Bruce stopped at approximately 2:45 a.m. to pay a toll at a toll booth on the Goethals Bridge. Mr. Bruce attempted to give money to the toll collector, defendant Jose Martinez, but had trouble getting Mr. Martinez's attention. Thinking that Mr. Martinez could not reach the money that Mr. Bruce offered, Mr. Bruce stepped out of his cab to give the money to Mr. Martinez. A verbal altercation ensued. Mr. Martinez showed Mr. Bruce a double-sided serrated knife and threatened Mr. Bruce with physical violence. Although Mr. Bruce eventually succeeded in getting Mr. Martinez to accept his money and issue him a receipt, Mr. Bruce called the police because of Mr. Martinez's threats. Mr. Martinez then assaulted Mr. Bruce with the knife.

Port Authority Police Officer (now Sergeant) Raul Morales responded to Mr. Bruce's call in a patrol car and, upon arriving at the scene, was approached by Mr. Bruce who showed him a laceration on his abdomen and told him that he had been stabbed by the toll collector. Mr. Bruce then lost consciousness, at which point a paramedic was summoned to treat his injuries. When Mr. Bruce regained consciousness and was being treated, Officer Morales advised him that the toll collector, Mr. Martinez, had accused Mr. Bruce of initiating the attack. Although Mr. Bruce had initially agreed to go to a hospital for further treatment at the suggestion of an EMT on the scene, Mr. Bruce decided to remain at the scene until he could clear his name. Mr. Bruce was then detained and handcuffed.

Upon investigation, Police Officer Morales found the blade of a knife on the concrete barrier near the toll booth and the sheath of the knife in the cab of Mr. Bruce's truck. Another person located the handle of the knife inside Mr. Martinez's toll booth. Police Officer Morales viewed a surveillance tape of the struggle, but remained unsure about which man had produced the knife. As an additional part of the investigation, Detective Timothy Mueller was summoned from John F. Kennedy International Airport and arrived at Goethals Bridge at 4:00 a.m. Detective Mueller was informed upon arrival that there had been an altercation between a toll booth collector and a patron, that the patron had suffered minor injuries, and that it was hard to tell from the security videotape who the aggressor had been.

Detective Mueller brought Mr. Bruce to a secure room in the Goethals Bridge police building across the street from the crime scene and removed Mr. Bruce's handcuffs. After speaking to Mr. Bruce, Detective Mueller interviewed the truck driver directly behind Mr. Bruce's truck. Observing that the other truck driver's story matched Mr. Bruce's version of events, Detective Mueller then viewed the surveillance tape and formed the impression that Mr. Bruce was the victim and Mr. Martinez the perpetrator. Shortly thereafter, Mr. Martinez was placed in an interview room where he admitted that he had used a knife on Mr. Bruce. At 7:00 a.m., Mr. Martinez was arrested for criminal assault, and Mr. Bruce was released.

## DISCUSSION

Motions for summary judgment are granted if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir.1995). The moving party must demonstrate the absence of any material factual issue genuinely in dispute. *Id.* The court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *Matsushita*

*Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986). The party must produce specific facts sufficient to establish that there is a genuine factual issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The plaintiff asserts that there are two remaining issues of material fact. The first issue—whether Mr. Martinez's assault was within the scope of his employment—relates to Mr. Bruce's assault and battery claims. The second issue—whether there was probable cause to detain Mr. Bruce—relates to Mr. Bruce's false arrest and false imprisonment claims.

### I. Whether Defendant Martinez's Assault Was Within the Scope of His Employment

Under New York law, no single mechanical test exists to determine whether an employee is acting within the scope of his employment. *Rausman v. Baugh,* 248 A.D.2d 8, 10, 682 N.Y.S.2d 42 (2d Dept.1998). However, New York law does provide various standards which can be helpful in this determination: (1) whether the employee's acts were within the direction and control of the employer; (2) whether the employee was acting under the express or implied authority of the employer; (3) whether the employee's act was in furtherance of the employer's interests; (4) whether the employee's action was an act in the execution of the employer's orders or part of the work assigned by the employer; (5) whether the acts were so closely connected with what the employee was hired to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite

improper ones, of carrying out the objectives of the employment. *Id.* "[B]ecause the determination of whether a particular act was within the scope of the servant's employment is so heavily dependent on factual considerations, the question is ordinarily one for the jury." *Riviello v. Waldron,* 47 N.Y.2d 297, 303, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (1979). In the present case, an issue of material fact exists as to whether Mr. Martinez's assault on Mr. Bruce occurred within the scope of his employment. Accordingly, the Port Authority's motion for summary judgment is denied as to Mr. Bruce's *respondeat superior* claim for assault and battery.

### II. Whether There Was Probable Cause to Arrest Mr. Bruce

Under New York law, warrantless arrests are presumptively invalid and, in an action for false arrest or false imprisonment, the government bears the burden of raising and proving the affirmative defense of probable cause for arrests effected without a warrant. *Golden v. City of New York,* 418 F.Supp.2d 226, 232 (E.D.N.Y. 2006), *citing Curry v. City of Syracuse,* 316 F.3d 324, 335 (2d Cir.2003); *Wu v. City of New York,* 934 F.Supp. 581, 586 (S.D.N.Y.1996). If the government does establish probable cause, this "constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under [42 U.S.C] § 1983." *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996) (internal citations and quotations omitted).

Probable cause exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Singer v. Fulton County Sheriff,* 63 F.3d 110, 119 (2d Cir.1995) (internal quotation marks omitted). In evaluating these matters,

courts "consider the facts available to the officer at the time of arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir.1997). Moreover, the validity of an arrest does not depend on an ultimate finding of guilt or innocence. *Pierson v. Ray*, 386 U.S. 547, 555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). "Rather, the soundness of the arrest hinges on the existence of probable cause at the time the arrest was made." *Dukes v. City of New York*, 879 F.Supp. 335, 340 (S.D.N.Y.1995). "The quanta of proof necessary to establish probable cause is only the probability, and not the prima facie showing, of criminal activity." *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir.1993) (internal quotation marks omitted). "Once a police officer has a reasonable basis for believing that there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti*, 124 F.3d at 128 (citing *Baker v. McCollan*, 443 U.S. 137, 145–46, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)).

▮▮▮ "While uncorroborated allegations of a victim alone will not necessarily establish probable cause, information about criminal activity provided by a single person can establish probable cause when the information is sufficiently reliable and corroborated." *Golden*, 418 F.Supp.2d at 232–33. "When a putative victim precisely identifies the alleged perpetrator of a crime and there is independent corroborative evidence to support at least some of the victim's assertions, a person of reasonable caution is warranted in believing that an offense has been committed by the perpetrator." *Wu*, 934 F.Supp. at 587 (internal citations and quotations omitted).

▮▮▮ In the present case, Mr. Martinez and Mr. Bruce accused each other of initiating a physical attack. That Mr. Bruce called the police to report the assault does not remove him from suspicion. Mr. Martinez accused Mr. Bruce of attacking him with a knife, and the sheath of the knife was discovered in Mr. Bruce's truck. In other words, a putative victim—Mr. Martinez—identified his alleged perpetrator, and there was independent corroborative evidence to support at least some of Mr. Martinez's assertions. That Mr. Bruce was injured and Mr. Martinez was not injured is not determinative; assailants may easily be injured when attacking a victim. Furthermore, although Mr. Bruce claims that the videotape clearly establishes that Mr. Martinez was the assailant, this is not immediately clear upon viewing the tape. A substantial part of the interaction between Mr. Martinez and Mr. Bruce occurred out of the camera's range, making it unclear which man was the initial assailant. Moreover, the video clearly shows *Mr. Bruce* with the knife in his hand at one point during the encounter. It was only after multiple viewings—and a request by plaintiff's counsel to examine a specific "freeze frame" one minute and twenty seconds into the tape—that the court was able to see a grainy frame in which Mr. Martinez appeared to be holding some object that resembled a knife.[3]

---

**3.** To support the argument that probable did not exist, Mr. Bruce also asserts in his Rule 56.1 statement that Mr. Martinez "was left to his own devices and remained free and unrestrained." But the issue is whether there was probable cause to arrest Mr. Bruce, not whether there was probable cause to arrest Mr. Martinez. In any event, Mr. Bruce's citation to the record—to a statement contained in the criminal complaint report—does not support his Rule 56.1 assertion. Officer Morales's and Detective Mueller's reports indicate that both Mr. Martinez and Mr. Bruce were detained prior to the time that Mr. Martinez was formally charged with criminal assault. Moreover, the deposition testimony of Laurence Hughes, Mr. Martinez's supervisor, indicates that police prevented Mr. Martinez

Although police eventually determined that Mr. Bruce was the victim of the assault and not the perpetrator, under the totality of circumstances confronting the police officers on the night of the incident, it was reasonable to believe that Mr. Bruce had committed a criminal offense at the time that Mr. Bruce was detained. Accordingly, the court finds that there was probable cause to detain Mr. Bruce and grants the Port Authority's motion for summary judgment as to Mr. Bruce's *respondeat superior* false arrest and false imprisonment claims.

## CONCLUSION

For the reasons outlined above, the Port Authority's motion for summary judgment is granted with respect to Mr. Bruce's claims for false arrest and false imprisonment and denied with respect to Mr. Bruce's claims for assault and battery. The parties are directed to prepare a joint pretrial order as to the latter claims under the supervision of Magistrate Judge Kiyo A. Matsumoto.

**SO ORDERED.**

from leaving the station house during the

